Interim Decision #1523

## Matter of McNeil

### In Deportation Proceedings

#### A-10130570

*Decided by Board November 3, 1964 and March 17, 1965*

*Decided by Attorney General November 5, 1965*

The taking by the Service of oral depositions from witnesses before the United States Consul in Calcutta, India, when respondent or his counsel was either unwilling or unable to be present but who thereafter had full opportunity to examine the depositions and to submit written cross-interrogatories, was not prejudicial to respondent; nor was there error because one of the witnesses when cross-examined was in Germany and no longer had access to records which were in India, and such depositions serve to properly authenticate the certificate of baptism and school record relating to respondent, executed and certified by the lawful custodians of such records (the witnesses), entered in evidence as exhibits in the deportation proceedings in his case.

CHARGES:

Warrant:  Act of 1924—[8 U.S.C. 213 and 214, 1946 ed.]—No immigration visa.

Lodged:  Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—After entry, member of Communist Party of United States.

Act of 1952—Section 241(a)(5) [8 U.S.C. 1251(a)(5)]—Failed to furnish notification of address.

### BEFORE THE BOARD

This case is before us pursuant to an order entered by a special inquiry officer on June 25, 1964, directing the respondent's deportation and certifying the case to this Board for final decision.

The respondent is a 60-year-old married male who claims he was born in the United States and is a citizen. The special inquiry officer found that the respondent is an alien who was born in India and concluded that he is deportable on the warrant charge and the first lodged charge. That officer adopted the previous findings which had been made in sustaining the two charges. The findings in our order of February 26, 1960 and in the special inquiry officer's order

378

of August 25, 1959 were to the effect that the respondent entered the United States between October 1937 and December 1938; that he was not then in possession of an immigration visa; and that he had been a member of the Communist Party of the United States at least during the period 1938 to 1945.

The respondent's case was before the court in *McNeil v. Kennedy*, 298 F.2d 323 (D.C. Cir., 1962). We have considered this record pursuant to that decision and in the light of the decisions in *Chung Young Chew v. Boyd*, 309 F.2d 857, 866 (9th Cir., 1962), and *McConney v. Rogers*, 287 F.2d 473 (9th Cir., 1961). In accordance with our discretionary authority under 8 CFR 3.1(d)(1) and (2),. we have concluded that the hearing must be reopened again and the case remanded to the Service inasmuch as it is our opinion that this record does not meet the requirements of the decisions cited.

It appears that the Service and the special inquiry officer endeavored to proceed under the Rules of Civil Procedure for the United States District Courts as set forth in Title 28, United States Code, and we believe this was appropriate under the three decisions cited above. Rule 30 relates to "Depositions Upon Oral Examination" and Rule 31 refers to "Depositions of Witnesses Upon Written Interrogatories." The special inquiry officer's order of February 19, 1963 authorized the taking of depositions of Messrs. Vyse and Ayre or, if not available, the persons having custody of the two records involved (Exs. R-27 and R-28). Counsel contends that it was error to permit the Service to examine the two witnesses on oral depositions and then restrict the respondent to cross-interrogatories particularly since one of the witnesses was examined on cross-interrogatories in Frankfurt am Main, Germany, and stated he could not answer certain questions because he no longer had access to the records which were in India. Under the circumstances of this case, we believe that the present custodians of the two records should be required to make new depositions upon written interrogatories by both sides in accordance with Rule 31.

Rule 28(b) [as amended January 21, 1963, effective July 1, 1963] specifies the persons before whom depositions may be taken in foreign countries, and Rule 28(c) provides, in part, that no deposition shall be taken before a person who is an employee of any of the parties. Counsel contends that one of the parties to the deportation proceeding is the United States and that the American Consular Officers, before whom the depositions and cross-interrogatories were made, are employees of the United States. The special inquiry officer and the Service did not indicate that counsel had waived this objection under Rule 32(b). We are not persuaded by the state-

ments of the Service and the special inquiry officer that it is the Immigration and Naturalization Service rather than the United States which is a party to the deportation proceeding. However, we need not reach a definite conclusion concerning this question since we have indicated that new depositions should be taken. The present record also appears to be inadequate since it does not specifically show that counsel was notified in writing as to the time and place for taking the deposition although counsel's "Notice" dated March 22, 1963 does mention a letter dated March 19, 1963 which he had received from the District Director. However, this letter is not part of the record before us.

In our order of February 26, 1960 (p. 6), we referred to counsel's request for reopening of the proceeding to permit the respondent to testify on the issue of citizenship. We stated that the respondent had been repeatedly requested to testify on this issue and, for reasons stated in that order, we concluded that the hearing should not be reopened. Following the decision in *McNeil* v. *Kennedy, supra,* we reopened the hearing by order dated April 12, 1962 and we specifically stated: "The Service and the respondent may present any pertinent evidence." On July 17, 1962 the special inquiry officer asked the respondent to be sworn and his counsel stated that he refused to testify against himself (p. R-47). On August 9, 1962 counsel requested that the hearing be reopened to permit the respondent to testify as to his birth. During the oral argument on October 22, 1962 (p. 7), counsel stated that the respondent had been willing to testify as to his place of birth before the special inquiry officer but that the special inquiry officer said that if he testified he would also have to testify concerning his Communist Party activity. The record shows that counsel was in error in this statement.

Since we have found it necessary to reopen the hearing, we believe that the respondent should be given the opportunity, which he allegedly desires, of testifying concerning the issue of citizenship. It is our opinion that the respondent's testimony, cross-examination by the trial attorney, and the opportunity for the special inquiry officer to consider the demeanor of the respondent while testifying will be helpful in resolving the issue of alienage. In order to avoid any future contention that the respondent again refused to testify because the Government insisted upon the right to examine him relative to asserted Communist Party membership in the event that he testified, we believe it would be appropriate for the trial attorney to stipulate that the respondent will not be questioned on that issue unless the respondent himself desires to testify concerning it. This is not to be construed as precluding the Service or the respondent

from presenting other evidence on the issue of deportability on the first lodged charge, particularly in view of the decision in *Gastelum-Quinones* v. *Kennedy*, 374 U.S. 469 (1963).

Pursuant to 8 CFR 242.17(a), a respondent in deportation proceedings is to be afforded the opportunity of applying under sections 244(a), 245 or 249 of the Immigration and Nationality Act, and it is specifically provided: "The special inquiry officer shall inform the respondent of his apparent eligibility to apply for any of the benefits * * * ." In his decision of June 25, 1964 (p. 9), the special inquiry officer stated that the respondent had refused to apply for any discretionary relief citing the transcript at page R-42. This relates to a hearing on April 20, 1959 and at that time the respondent declined to apply for voluntary departure or suspension of deportation. In view of the time which has since elapsed, we believe it should be ascertained whether the respondent may now desire to apply for discretionary relief. In addition, we have been unable to find in the record that the special inquiry officer actually informed the respondent that he was apparently eligible to apply for any of these benefits, and it would seem that he would at least be eligible to apply under section 244(a).

ORDER: It is ordered that the special inquiry officer's order of June 25, 1964 be withdrawn and that the hearing be reopened for further proceedings in accordance with the foregoing.

### BEFORE THE BOARD

On June 25, 1964, a special inquiry officer ordered the respondent's deportation and certified the case to this Board. We directed that the hearing be reopened in our order of November 3, 1964, and the case is now before us on motion of the Service dated December 3, 1964, seeking reconsideration of that order.

The respondent is a 61-year-old married male who claims he was born in the United States and is a citizen. In earlier proceedings in this case, it was found that the respondent was born in India; that he entered the United States between October 1937 and December 1938; that he was not then in possession of an immigration visa; and that he had been a member of the Communist Party of the United States during the period 1938 to 1945.

The Service asserted in its motion (p. 17) that we remanded the case for inquiry in the light of *Gastelum-Quinones* v. *Kennedy*, 374 U.S. 469 (1963); that we directed that the Service enter into a stipulation limiting cross-examination to the question of alienage (p. 16); and (pp. 5-6) that our order directs that the respondent be given a further opportunity of testifying concerning his citizenship

and that it be ascertained whether he desires to apply for discretionary relief. These matters were not specifically directed in our order although we did make certain observations concerning them with the thought that the Service might wish to take action which would eliminate them as possible issues in any future litigation in this case. In order to avoid any further misunderstanding, we desire to make it clear that we are not directing any of these actions but will leave this entirely to the judgment of the Service and the special inquiry officer subject to our consideration of the questions if raised by the respondent in any future proceedings before this Board. For that reason, we need not discuss the contentions of the Service concerning those matters.

As indicated in the third paragraph on page 2 of our order of November 3, 1964, the actual reason for reopening the hearing and remanding the case to the Service was that we had concluded that the record did not meet the requirements of the decisions in *McNeil* v. *Kennedy*, 298 F.2d 323 (D.C. Cir., 1962); *Chung Young Chew* v. *Boyd*, 309 F.2d 857, 866 (9th Cir., 1962); and *McConney* v. *Rogers*, 287 F.2d 473 (9th Cir., 1961). In the first case, that of the respondent, the Court of Appeals stated that the certificate of baptism and a letter from a school in Calcutta had not been verified or authenticated. One of the questions involved in the second case cited was whether the Rules of Civil Procedure for the United States District Courts, as set forth in Title 28, United States Code, were applicable in deportation proceedings. Although the court did not specifically hold that they were applicable, it indicated the desirability of following the rules. In the McConney case, the alien was informed that his hearing would be continued in order to obtain the deposition of his mother but he was not advised of the time and place for taking the deposition and the court held this was error.

We pointed out in our previous order (p. 4) that the present record appears to be inadequate since it does not specifically show that counsel was notified in writing as to the time and place for taking the deposition. At the time the depositions herein were obtained, there was no regulation of the Service dealing particularly with that matter, but it is now covered by 8 CFR 242.14(e), effective September 24, 1964, which states that the federal Rules of Civil Procedure shall be used as a guide to the extent practical. The regulation expressly provides that a deposition witness shall be notified to appear for examination on Form I-260 and that copies of such notice shall be furnished to the parties to the proceeding. Hence, under the present regulations it appears that the respondent's

counsel would be entitled to notice of the time and place for the taking of the deposition.

In our order of November 3, 1964, we stated that Rule 30 of the Rules of Civil Procedure relates to "Depositions Upon Oral Examination" and that Rule 31 refers to "Depositions of Witnesses Upon Written Interrogatories." We believe that a reading of Rules 30 and 31 in their entirety indicates clearly that a deposition should be taken under one or the other but not under both.

Subsection (c) of Rule 30 relates to "Record of examination; oath; objections", and one sentence thereof was quoted by the Service in its motion (p. 13). This sentence is as follows: "In lieu of participating in the oral examination, parties served with notice of taking a deposition may transmit written interrogatories to the officer, who shall propound them to the witness and record the answers verbatim." The use of the word "may" shows that this procedure is permitted but not that a party is required to follow it. In addition, the interrogatories subsequently prepared by this respondent were not taken under Rule 30(c) because that rule contemplates that the written interrogatories will be propounded at the time of the original oral examination of the witness.

When the trial attorney originally submitted his motion for the taking of depositions at Calcutta, India, counsel filed his memorandum of February 11, 1963 in opposition, urging that the prospective witnesses appear in person at the hearing or, if this was denied, that the Service furnish funds for the expense of travel of counsel and the respondent to India since the respondent was not financially able to pay for this. Counsel contends that it was error to permit the Service to examine the two witnesses on oral examination and then require him to cross-examine the witnesses on written interrogatories particularly since one of the witnesses was cross-examined on interrogatories in Germany and could not answer certain questions because he no longer had access to the records which were in India. We stated in our previous order (p. 3): "Under the circumstances of this case, we believe that the present custodians of the two records should be required to make new depositions upon written interrogatories by both sides in accordance with Rule 31." In addition, counsel contends that one of the parties to the deportation proceeding is the United States; that the American Consular Officers, before whom the depositions were made, are employees of the United States; and that Rule 28(c) provides, in part, that no deposition shall be taken before a person who is an employee of any of the parties. As indicated by the quoted sentence from our previous order, we did not reach a specific conclusion that the depositions which had been taken

were defective. In view of the contentions of counsel, however, we were of the opinion that all of his objections could be easily met by simply taking new depositions under Rule 31.

We have carefully considered the various contentions in the motion of the Service dated December 3, 1964 and its "MEMORANDUM OF LAW" dated December 16, 1964. We can perceive no useful purpose in discussing these in detail. The situation is entirely similar to that in *Matter of SS "Ryndam"*, Int. Dec. No. 1278 (1963). In that case, we had remanded the case to the Service to permit the submission of additional evidence and the Service requested reconsideration of our order. When the case reached the Attorney General on certification, he commented on the proliferation of the issues and said (p. 13) : "Had this case come before me simply as a request to review the Board's initial decision, it would present no problem, for I have no doubt that the Board's discretionary authority under 8 CFR 3.1(d)(1) includes the power to remand a case for the taking of further testimony, whether or not an error of law was committed below."

Hence, the question of whether there was or was not an actual error of law in the taking of the present depositions is not the criterion for judging the action we directed since our order of November 3, 1964 (p. 2), shows clearly that we were acting under our discretionary authority as set forth in 8 CFR 3.1(d)(1) and (2).

**ORDER:** It is ordered that the motion of the Service for reconsideration, except as reconsidered herein, be denied.

#### BEFORE THE ATTORNEY GENERAL

**ORDER:** The decision of March 17, 1965, by the Board of Immigration Appeals in this case denying reconsideration of the Board's order of November 3, 1964, which remanded the case for further proceedings, is reversed, and the Board is directed to proceed to a final decision.

The Board of Immigration Appeals, at the request of the Commissioner of Immigration and Naturalization, has referred to me for review, as provided by 8 CFR 3.1(h)(1)(iii), its order of March 17, 1965, denying a motion of the Immigration and Naturalization Service for reconsideration of the Board's order of November 3, 1964, which directed that the hearings in this deportation proceeding be reopened. The respondent is a 61-year-old married male who claims he was born in the United States and is a citizen.

In earlier proceedings in this case, it was found that the respondent is an alien who was born in India; that he entered the United States between October 1937 and December 1938; that he was not

then in possession of an immigrant visa; and that he had been a member of the Communist Party of the United States during the period from 1938 to 1945. The issues now before me pertain to the procedure to be followed by the Service in taking depositions.[1] More specifically, the respondent challenges the method followed in authenticating certain documents offered to prove that he was born in India. These documents are a certificate of baptism purporting to be a copy of a record of respondent's baptism at St. Andrew's Church, Calcutta, shortly after his birth, and a letter from the principal of a school in Calcutta purporting to show respondent's record in the files of the school indicating that he was born in Calcutta on the day mentioned in the certificate of baptism. Both documents had been admitted in evidence in prior proceedings in this case. In January 1962, the United States Court of Appeals for the District of Columbia noted that the documents had not been authenticated or verified "in any manner" and directed that the case be remanded to the Immigration and Naturalization Service for further proceedings. The Court stated: "It is undisputed that appellant is deportable if an alien, and the issue of his alienage turns upon his place of birth . . . We cannot say that the Service would have reached the conclusion it did except for the documents referred to; and it is not for us to make the decision as an initial matter on the basis of other evidence." *McNeil v. Kennedy,* 298 F.2d 323 (D.C. Cir., 1962).

Subsequently, in reopened hearings the Service reintroduced these documents. The certificate of baptism was executed by P. Logan Ayre, Chaplain of St. Andrew's Church, Calcutta, India, who certified it to be a true extract from the register of baptisms at the church. Attached was an authentication by the United States Consul at Calcutta that the document was certified by its lawful custodian. The school record was set forth on school stationery as a certified copy of the record of respondent in the school files over the signature of J. C. Vyse, Principal. Attached to it was an authentication by the United States Vice-Consul at Calcutta that the document had been certified by its lawful custodian. After the special inquiry officer reaffirmed findings as to the respondent's alienage and deportability, the Board on December 6, 1962, returned the case to the Service for additional action to authenticate these two documents. The Board stated that there should be compliance with some generally recognized manner of verifying and authenticating documents, although it did not "lay down a general rule for receipt of documents

---

[1] During the period relevant herein there was no Service rule with respect to obtaining depositions. 8 OFR 242.14(e), effective September 24, 1964, sets forth the present practice.

in evidence in deportation proceedings." It went on to say that "[i]f the Service is of the belief that baptism and school records are 'official records,' the Service should establish the official nature. Where testimony of individuals abroad is required, to authenticate or verify the documents, utilization of depositions, interrogatories and cross-interrogatories would appear to offer a practical means."

The special inquiry officer then granted a motion by the Service for taking depositions in Calcutta, India, of Mr. Vyse and Mr. Ayre on oral examination or on written interrogatories. He denied a request by respondent that the witnesses be ordered to appear in person or that the Service be ordered to provide funds for respondent and his counsel to enable them personally to attend the depositions. It does not appear that at any point respondent endeavored to have the Service limited to taking the depositions upon written interrogatories. The record shows that on March 5, 1963, respondent notified the Service that respondent and his counsel were unable to appear in Calcutta and that they reserved the right to propound cross-interrogatories within a reasonable time after receipt of a copy of the transcript of the Calcutta examinations.

In his deposition Mr. Ayre testified that he has been a minister of religion since 1938 and Chaplain of St. Andrew's Church, Calcutta, India, since 1956; that he is the highest official of the Church of Scotland in Calcutta; that permanent records of all baptisms performed within or by persons officially connected with St. Andrew's Church are maintained in that church; that he is the one person responsible for the proper maintenance and safeguarding of the records; that the records of St. Andrew's Church are made in the ordinary course of the church's business and are maintained in compliance with its laws; that the records in his custody are the original and only records of baptisms performed within St. Andrew's Church; that the baptismal records are executed on the date of the baptism; that baptismal records have been maintained at St. Andrew's Church since 1814; that Exhibit R-28 (certificate of baptism) represents a complete and accurate extract taken from the church's original baptismal records appearing in a bound volume entitled "Calcutta Baptisms 1890-1904"; that the permanent records of the church are kept in a lockfast room in the church and have been so kept in their present location since 1818; that ordinarily the pertinent information is supplied by the child's parents; and that the persons to be baptized are physically present in the church and seen by the chaplain or minister at the time of baptism.

With respect to the school record (Exhibit R-27), Mr. Vyse, in his deposition, testified that he is employed by the Board of Govern-

ors, La Martiniere School, in Calcutta, India, as principal of the school; that the school was founded in and has been at its present location since 1836; that he has been employed at the school since 1936, and as principal for the past three years; that his signature appears on Exhibit R-27, which is a certified copy of an extract from the school records of La Martiniere; that the information contained in the extract was obtained from the journal in the school office which is an abstract from the admission form that is filled in by the parent or guardian at the time of admission of a pupil; that the journal is an official and permanent record of the school; that he is the official custodian of all existing permanent records kept in the school office; that the records are permanent in nature and are made and maintained under his supervision and direction; that Exhibit R-27 is a complete and accurate account of information contained in the school's permanent records; and that these records are made and maintained in the ordinary course of the school's business.

On May 3, 1963, respondent was served with copies of the Calcutta depositions. On May 17, 1963, he moved to suppress them on the ground that the United States Counsul in Calcutta, before whom the depositions were taken, was an employee of one of the parties and therefore disqualified under Rule 28(c) of the Federal Rules of Civil Procedure. This motion was denied by the Special Inquiry Officer and respondent then propounded cross-interrogatories. The Special Inquiry Officer, admitted the depositions in evidence and, finding, among other things, that the baptismal certificate and school record were properly authenticated, ordered the respondent deported.

On November 3, 1964, the Board directed that the Special Inquiry Officer's decision be withdrawn and the proceedings again reopened; the Board on March 17, 1965, denied a motion of the Service for reconsideration of its decision. In its opinion denying reconsideration the Board stated that the record was still inadequate with respect to the method of authentication of the baptismal certificate and the school record. I do not agree.

As its first ground for rejection of the depositions the Board notes, sua sponte, that the record does not specifically show that respondent's counsel was notified in writing as to the time and place for taking the depositions. The record shows that respondent was served with a motion for an order to take depositions dated January 30, 1963. The motion papers set forth the names and positions of the persons to be examined, the precise subjects of the depositions, and the city where the depositions were to be taken. After the special inquiry officer issued an order authorizing the taking of the depositions, respondent filed a notice which stated that he and his counsel

were unable to appear in Calcutta and which reserved the right to propound cross-interrogatories within a reasonable time after respondent's counsel received a copy of the depositions. In opposing respondent's May 1963 motion to suppress the depositions the Service stated that respondent's counsel was.notified on March 19, 1963, that the depositions would be taken on April 18, 1963, in Calcutta, India. This statement has not been contradicted. Under the circumstances there does not appear to have been any prejudice to the respondent.[2]

The Board also claims that it was error to permit the Service to take oral depositions from the Calcutta witnesses when respondent or his counsel was either unwilling or unable to be present. I think that it was within the special hearing officer's discretion to permit this method to be followed, where, as here, respondent had full opportunity to examine the depositions and then to submit cross-interrogatories.

The Board's principal ground for this ruling appears to be its view that this practice violates the Federal Rules of Civil Procedure. Although I am not at all certain as to the Board's basis for application of the Federal Rules to deportation proceedings,[3] it appears that the procedure followed is authorized both by Rule 30(c) of the Federal Rules of Civil Procedure [4] and by court decisions sustaining Service practice.[5]

---

[2] *McConney v. Rogers*, 287 F.2d 473 (9th Cir., 1961), cited by the Board, is distinguishable, since in that case there was no opportunity given for confrontation of a key witness,.either directly or by cross-interrogatories.

[3] *Chung Young Chew v. Boyd*, 309 F.2d 857, 866–67 (9th Cir. 1962), cited by the Board, merely observes that the Federal Rules provide an acceptable means for authenticating public documents while assuming that the Federal Rules are not controlling in administrative hearings.

[4] The last sentence of Rule 30(c) provides that "[i]n lieu of participating in the oral examination, parties served with notice of taking a deposition may transmit written interrogatories to the officer, who shall propound them to the witness and record the answers verbatim." In *Gitto v. "Italia," Societa Anonima Di Navigazione, Genova*, 28 F. Supp. 309 (E.D. N.Y., 1939), the court stated that where a party to a civil action gives notice that a deposition is to be taken of a witness abroad, the other party may retain foreign counsel to participate in the examination if he feels that the expense of having his own lawyer participate is too great, or, if he believes that foreign counsel will be unable to carry out effective cross-examination, he may transmit written interrogatories as provided by Rule 30(c). See also 4 Moore, *Federal Practice* (2d ed. 1963) § 30.18.

[5] *Hyun v. Landon*, 219 F.2d 404 (9th Cir., 1955), aff'd by an equally divided Court, 350 U.S. 990 (1956); *Bhagat Singh v. McGrath*, 104 F.2d 122, 123 (9th Cir., 1939); cf. *McConney v. Rogers*, 287 F.2d 473, 476 (1961). It should be noted that the Service's rules now in effect (footnote 1, *supra*) expressly authorize this procedure. 8 CFR 242.14(e), effective September 24, 1964.

In reaching its conclusion that new depositions should be taken the Board observes that one of the witnesses (the custodian of the certificate of baptism) was cross-examined in Germany and could not answer certain questions because he no longer had access to records which were in India. I fail to see any error here. This witness was called by the Service for a very limited purpose—to authenticate a document which spoke for itself. The fact that the witness was in Germany when he replied to the cross-interrogatories did not prevent him from giving answers to any of the questions propounded by respondent to the extent that they were pertinent to the witness' capacity to authenticate the certificate of baptism; none of the answers on cross-examination weakened the authenticity of the certificate. The only question which the witness was unable to answer because of his change in residence was whether there were any other entries in the names of the parents of the respondent. The witness had not testified on direct examination that he had searched the church records for any other names. The respondent by this question was opening up an entirely new line of inquiry, the relevance and materiality of which have never been explained. As early as September 5, 1963, counsel for respondent was served with a Supplemental Order of the Special Inquiry Officer which noted that the witness was no longer residing in India. If respondent were seriously interested in presenting testimony on this point he could have asked at that time that interrogatories be directed to the present custodian of the records in India.

Although the Board has not expressly decided the point, it has indicated that consular officials are parties in interest in these proceedings and may not therefore preside at the taking of depositions abroad. The Service's present rule concerning depositions provides: "In the United States, examination of the witness should take place before a special inquiry officer; abroad, preferably before a United States consular official." 8 CFR 242.14(e). Respondent contends that Rule 28(c) of the Federal Rules of Civil Procedure, which provides that no deposition shall be taken before a person who is an employee of one of the parties, is controlling in these proceedings and that consular officials are employees of one of the parties within the meaning of that rule. As noted above, and as recognized by the special inquiry officer in his order of May 29, 1963, the Federal Rules of Civil Procedure are not controlling in deportation proceedings. In any event, since consular officials are not paid or supervised by the Department of Justice or the Service and since the consul certified that he was not "counsel or kin to any of the parties to this cause or in any manner interested in the result thereof," I see no reason to

find that Rule 28(c) has been violated. Bearing in mind that the Federal Rules are not directly applicable and should be applied only to the extent that they can be adapted to the reasonable needs of the Immigration and Naturalization Service, it may appropriately be noted that under respondent's theory even special inquiry officers would be precluded from presiding at the taking of depositions. cf. *Marcello* v. *Bonds*, 349 U.S. 302 (1955).

Under the circumstances the Board should proceed to a final decision based on the present record. It does not appear that the public interest will be served by further delay in reaching a decision in this case.